MOORE v. RETY.

1. AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—INTERSECTION COLLI-
SION—OBSERVATION OF OTHER THAN NEAREST CAR.
  Southbound motorist who stopped and observed traffic before
  starting across 40-foot pavement, waited until nearest car ap-
  proaching from right was about 400 feet away before start-
  ing, and although observed same car had traveled some 50 to
  70 feet, concluded he could safely proceed with his car and
  empty boat trailer *held*, guilty of contributory negligence as
  a matter of law in failing to observe defendants' eastbound
  truck approaching at speed of upwards of 60 miles an hour
  and which had overtaken other vehicle observed by plaintiff
  and which collided with plaintiff's car in middle or southerly
  portion of intersection and no circumstances are shown excus-
  ing plaintiff from making such observation.

2. SAME—CONTRIBUTORY NEGLIGENCE—PASSENGERS.
  In action by wife of driver, riding with him in vehicle involved
  in automobile accident, recovery was not barred by reason of
  his contributory negligence but it was incumbent upon her to
  show she was free from contributory negligence.

3. SAME—CARE REQUIRED OF GUEST PASSENGERS.
  A guest passenger in an automobile is not obliged to exercise
  the high degree of care required of a driver but is required
  to exercise ordinary care to observe and appreciate danger.

4. COSTS—AUTOMOBILES—ABANDONMENT OF IMPUTED NEGLIGENCE
DOCTRINE—NEW TRIAL.
  In action by plaintiff wife where trial judge properly found her
  husband who was driving car in which she was a passenger
  guilty of contributory negligence as a matter of law and then,
  pursuant to previous holdings of the Supreme Court, imputed
  such negligence to her, where judgment for defendant is re-
  versed and new trial granted because subsequent to such trial
  the doctrine of imputed negligence has been abandoned in this
  State, costs abide the result of the new trial.

---

Contributory negligence as a matter of law, see 2 Restatement,
Torts, §§ 432, 463, comment b, 464, comment a, 465, 466, comment
g; standard of conduct to which plaintiff must conform, see §§ 283–
285.

Plaintiff is not barred from recovery by negligent act of her driver
but burden of proof is on her to prove her own freedom from direct
contributory negligence, see 2 Restatement, Torts, p. 1266, topic 4,
§§ 485, 487, 490.

Appeal from Wayne; Webster (Clyde I.), J. Submitted April 11, 1945. (Docket Nos. 58, 59, Calendar Nos. 43,012, 43,013.) Decided March 5, 1946.

Separate actions of case by Clarence L. Moore and Florence Moore against Ernest J. Rety and others for personal injuries sustained in an automobile accident. Cases consolidated. Directed verdicts and judgments for defendants. Plaintiffs appeal. Affirmed as to plaintiff Clarence L. Moore. Reversed and new trial granted plaintiff Florence Moore.

*Edward N. Barnard,* for plaintiffs.

*Maurice Miller,* for defendants.

REID, J. These two cases, consolidated for the purposes of trial, grow out of a collision which occurred about 4:55 p. m. on November 18, 1941, at the intersection of Evergreen road and Plymouth road in the western portion of the city of Detroit. In each case a verdict for the defendants was directed by the trial judge. Plaintiffs appeal.

The only question involved is the question of the contributory negligence of plaintiff Clarence L. Moore, driver of the car in which he and his wife, the other plaintiff, were riding at the time of the accident.

Plaintiff Clarence L. Moore, who is hereinafter designated solely as plaintiff, testified that he was returning from Chemung Lake, driving his Packard coupe automobile, to which was attached an empty boat trailer which extended from the rear of his car a distance of about 8 feet and weighed about 600 pounds; that when he came to the intersection of Plymouth road as he was going southerly on Evergreen road he came to a stop; that he looked both ways up and down Plymouth road and there was

some traffic; that he waited there for a minute and a half, perhaps two minutes, until the traffic cleared up both ways and until there was only one car, he would say about 400 feet distant on Plymouth road, approaching at 25 or 30 miles per hour; that later he found out that Mr. Emery was driving that car; that he knew the Emery car wasn't coming fast enough to interfere with his car and that he would have time enough to entirely cross the street ahead of the Emery car.

In his brief plaintiff states the facts as follows:

"Mr. Moore made *two* observations before he entered the intersection. The first occurred when he stopped behind the yellow line which was behind the sidewalk line and waited for traffic to clear. At this point he observed Emery at a distance of 400 feet and other traffic as he estimated, 'I would say 1,000 feet or so.' Emery was traveling 25 to 30 miles per hour. From the time Moore was standing at the yellow line 400 feet from Emery, until the panel truck passed Emery, the latter traveled 100 to 150 feet. If Emery was going 25 miles per hour and the truck 70 miles per hour then the truck traveled as far as 2.8 times 150 feet or 450 feet. Thus by adding the two distances the panel truck was 850 feet from Moore at the time he was at the yellow line. This is the distance the truck was to the west when Moore was making his first observation based upon the testimony of Emery and Moore.

"Moore then stated that when he 'got to the curb line'—he 'looked again both ways,' *as the second observation*. During this time Emery had traveled between 50 and 70 feet. By computation on the same basis of relative speeds the panel truck must have been 2.8 times 50 feet closer, which would bring it to a distance of 710 feet from the intersection at the time Moore was at the curb line and in motion. This was the situation when he entered the intersection.

"In making these computations we adopt the version of the testimony most favorable to plaintiffs, as we are entitled to do.

"When counsel sought to pin Mr. Moore down as to whether or not he saw the car that struck him he says, 'I didn't say I didn't see it. I may have seen it. There were 3 or 4 cars coming.'

"When he looked the third time it was in the middle of the intersection and defendants' car was almost upon him.

"So it seems to us that while it may not be clear that Mr. Moore distinguished the vehicle that struck him, before he entered the intersection, we are entitled to the direct testimony that he did see the traffic of which it was a part and that he exercised his judgment that he could safely cross. It is absolutely certain under the testimony that defendants' car was at least 200 to 250 feet from the intersection at the time Moore was one-third of the distance across, for the witness Emery testified that it passed him at that point going 60 to 70 miles per hour astride the medial line of the highway. And while Mr. Moore's estimate that 'it was about 1,000 feet' when he Moore, made his first observation before he started into the intersection, it clearly was at that time under Emery's testimony 850 feet distant, because Emery's car was fixed at 400 feet distance at that time and it was not until some seconds afterwards, while Emery was traveling 150 to 200 feet at 25 to 30 miles per hour that he was overtaken by it. Simple computation shows it to have been 850 feet distant.

"The question then presents itself as to whether or not one entering an intersection, after making full and adequate observation, from a point several feet from the intersection and observing traffic 850 feet away, and deciding in his own mind and in the exercise of his own judgment that he may safely cross, then starting and making a further observation at the curb line, when it was 710 feet distant, he was

guilty of contributory negligence in so essaying to cross as a matter of law.''

Plaintiff further testified that at no time while he was progressing in the intersection was he going at a speed so great as to prevent his stopping his car within three feet, and that his car was struck just back of the front wheel between the door and the front wheel; that after he had seen the Emery car about 400 feet distant, the Emery car traveled perhaps 50 to 70 feet; that after noting that progress of the Emery car plaintiff paid no further attention to any traffic that was approaching from his right and proceeded through the northerly half of the Plymouth road pavement, which pavement is 40 feet wide. After having progressed so far that the front part of his Packard coupe had gone into the southerly part of the street and his rear wheels either practically approaching or onto the median line of the pavement of Plymouth road, he, for the first time after entering the intersection, noted the approach of the truck driven by defendant Rety and owned by defendant Alexander. Plaintiff further testified that his car traveled only a few inches after he noticed defendants' truck before the impact.

It is fairly to be inferred that each driver made some effort to avoid the collision, plaintiff by endeavoring to turn to his left and Rety, the driver of the other vehicle, by endeavoring somewhat to turn to his right. The testimony indicates a very great speed on the part of defendants' truck, estimated at 60 or more miles per hour. The witness Emery says defendants' truck was going 60 miles an hour at least, 60 to 70. Defendants' truck had passed the Emery car and Emery was situated where he could see the two vehicles up to the moment of collision but could not see the parts of the two cars that immediately came in contact with each other.

Many cases are cited by defendants in their brief. Particularly emphasized is the case of *Nelson* v. *Linderman,* 288 Mich. 186, in which case it appears that plaintiff approached the intersection of two streets at a speed of 8 or 10 miles per hour and when he was 8 or 10 feet from the intersection, he observed defendant's car 300 feet from the intersection, that plaintiff had crossed the center of the road when he was struck by defendant's car and that from the time defendant's car was 300 feet from the intersection plaintiff did not observe it again until the impact. We held that under the circumstances of that case, plaintiff driver's failure to make any observations while he was traveling the last 25 feet precluded recovery. In that case, as in the instant case, there was nothing to obstruct the view of the driver to prevent his observing the car with which his car came into collision. See, also, *Carey* v. *De Rose,* 286 Mich. 321; *Carrothers* v. *French,* 309 Mich. 340, 347, 348.

In the instant case, plaintiff wrongly assumes that his duty to observe other traffic ceased when he concluded he could cross the intersection ahead of the nearest approaching car, without observing the speed of other cars back of the nearest car. If plaintiff had stopped his car at any point four feet or more north of the center line of Plymouth road, the collision would not have occurred even if defendants' truck were astride the center line; but plaintiff swears that the collision occurred south of the center line. In any view of the facts, if plaintiff during his progress in the intersection had seasonably observed the approach of defendants' truck, he could have avoided the collision.

Clearly plaintiff failed to do what an ordinarily prudent driver must be expected to do, which is to pay attention to other traffic which he could fairly

well observe that would jeopardize his car. There
are no circumstances shown in this case that would
excuse plaintiff from the performance of that duty.

See, also, *Lacaeyse* v. *Roe,* 310 Mich. 591.

We conclude that Clarence Moore is guilty of contributory negligence as a matter of law and that the
trial judge properly directed a verdict against him.

We must now consider the action brought by plaintiff Florence Moore. Since the trial of this case we
have rendered our decision in *Bricker* v. *Green,* 313
Mich. 218 (163 A. L. R. 697), in which opinion at
p. 236 we quote with approval from 2 Restatement,
Torts, p. 857, § 315, comment b:

"If the actor, while riding merely as a guest, does
not warn the driver of a danger of which he knows
and of which he has every reason to believe that the
driver is unaware, by failing to do so he becomes
guilty of contributory negligence which precludes
him from recovery against another driver whose
negligent driving is also a cause of a collision in
which the actor is himself injured."

In the instant case plaintiff Florence Moore testified as follows on direct examination:

"I saw a car about a half a block away. And the
other traffic that was coming was beyond that. This
car that was half a block away was coming toward
Evergreen. I saw this car, my husband then started
on across. I didn't look any more. I never saw the
panel truck."

On cross examination she testified,

"I told Mr. Barnard (attorney for plaintiffs) that
I did make observations myself. I saw Mr. Emery's
car, maybe it was half a block or a little more. I at
no time saw this panel delivery which subsequently
came in contact with our car. * * * I know that
Plymouth Road is a through highway. And it is
usually a heavily-traveled highway, it is an important thoroughfare. That is the reason we

stopped. And that fast traffic uses Plymouth highway."

In view of *Bricker* v. *Green, supra,* the negligence of Clarence Moore, the driver of the car, is not imputable to Florence Moore as passenger in the car. However, it was incumbent upon Florence Moore as plaintiff to show that she was free from contributory negligence. Her testimony that she knew Plymouth road to be a through highway, heavily traveled, that fast traffic uses it, and that traffic was approaching, are indications on the subject of her duty to exercise care.

"It is the undoubted rule that the invited passenger is not absolved from the duty to exercise reasonable care for his own safety." *June* v. *Railway Co.,* 232 Mich. 449, 456.

Plaintiff Florence Moore was not obliged to exercise the high degree of care required of the driver. Ordinary care to observe and appreciate danger was required under the circumstances of this case. *June* v. *Railway Co., supra,* 456, 457.

The trial judge directed a verdict against plaintiff Florence Moore on the grounds of imputed negligence, which ruling was erroneous under the authority of *Bricker* v. *Green, supra.* On a new trial of her case one of the issues to be tried is whether she exercised ordinary care in view of all the circumstances.

Judgment for defendants in the case of Clarence Moore is affirmed, with costs to defendants.

Judgment for defendants in the case of Florence Moore is reversed and new trial ordered. Costs to abide the result.

BUTZEL, C. J., and BUSHNELL, SHARPE, BOYLES, NORTH, and STARR, JJ., concurred. The late Justice WIEST took no part in the decision of this case.